# CASE NO. 23-13573

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**TELMA O. HALL,**

    **Plaintiff-Appellee/Cross-Appellant,**

**v.**

**ALABAMA STATE UNIVERSITY,**

    **Defendant-Appellant/Cross-Appellee.**

On Appeal from the United States
District Court for the
Middle District of Alabama,
Northern Division
Case No. 2-16-cv-00593-JTA

CROSS APPEAL No. 23-13574

# BRIEF OF APPELLANT/CROSS-APPELLEE,
# ALABAMA STATE UNIVERSITY

**Bill D. Bensinger**
**Shauncey Hunter Ridgeway**

**CHRISTIAN & SMALL LLP**
**COUNSEL**
**505 North 20th Street, Suite 1800**
**Birmingham, Alabama 35203**
**Telephone: (205) 795-6588**
**Facsimile: (205) 328-7234**
**E-mail:** **bdb@csattorneys.com**
        **shr@csattorneys.com**

**Kenneth L. Thomas**
**Ramadanah M. Salaam-Jones**
**Joi C. Scott**

**OFFICE OF THE GENERAL**
**COUNSEL**
**ALABAMA STATE UNIVERSITY**
**P.O. BOX 271**
**MONTGOMERY, AL 36101-0271**
**Telephone: (334) 229-1465**
**Email:** **kthomas@alasu.edu**
        **rsjones@alasu.edu**
        **jscott@alasu.edu**

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Counsel for Appellant/Cross-Appellee Alabama State University, hereby certify that the following is a complete list of the district court judge and attorneys involved in this case, and all persons, associates of persons, firms, partnerships, corporations, or other entities having an interest in the outcome of this case:

> Adams, The Honorable Jerusha T., Magistrate Judge for the United States District Court for the Middle District of Alabama

> Alabama Education Association, Counsel for Plaintiff-Appellee/Cross-Appellant

> Alabama State University, Defendant-Appellant/Cross-Appellee and Public University in the State of Alabama

> Bensinger, Bill D., Counsel for Defendant-Appellant/Cross-Appellee

> Board of Trustees for Alabama State University, the Governing Body for Defendant-Appellant/Cross-Appellee

> Christian & Small LLP, Counsel for Defendant-Appellant/Cross-Appellee

> Comer, Sabrina LeAnne, Counsel for Plaintiff-Appellee/Cross-Appellant

> Comer Elder Law LLC, Counsel for Plaintiff-Appellee/Cross-Appellant

C1

Danley, Lacey K., Counsel for Plaintiff-Appellee/Cross-Appellant

Hall, Telma O., Plaintiff-Appellee/Cross-Appellant

Hiscox Insurance Company Inc., Insurer for Defendant-Appellant/Cross-Appellee and the Board of Trustees for Alabama State University

Jackson, Shanitra, Counsel for Plaintiff-Appellee/Cross-Appellant

McGowan, Candis Annette, Counsel for Plaintiff-Appellee/Cross-Appellant

Ridgeway, Shauncey Hunter, Counsel for Defendant-Appellant/Cross-Appellee

Salaam-Jones, Ramadanah M., Counsel for Defendant-Appellant/Cross-Appellee

Scott, Joi C., Counsel for Defendant-Appellant/Cross-Appellee

Thomas, Kenneth L., Counsel for Defendant-Appellant/Cross-Appellee

Wiggins Childs Pantazis Fisher & Goldfarb, LLC, Counsel for Plaintiff-Appellee/Cross-Appellant


Counsel for Appellant further certify that Alabama State University is a governmental entity and public university in the State of Alabama. Additionally, Counsel for Appellant certifies that Hiscox Insurance Company, Inc. is a wholly owned subsidiary of Hiscox Ltd., a Bermuda Corporation that is publicly traded on the London Stock Exchange as HSX.L. Invesco Limited owns more than 10% of

Hiscox Ltd.'s stock. To the knowledge of Counsel for Appellant, no other publicly

traded company or corporation has an interest in the outcome of this case.

C3

# STATEMENT REGARDING ORAL ARGUMENT

Appellant/Cross-Appellee Alabama State University ("ASU") respectfully requests oral argument in this case. ASU believes that oral argument would significantly aid the Court in understanding the facts in this case and applying the law to the particular facts at issue here.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement.................C1

Statement Regarding Oral Argument ..........................................................................i

Table of Contents .................................................................................................... ii

Table of Citations ...................................................................................................vi

Jurisdictional Statement ........................................................................................ xii

Statement of the Issues............................................................................................1

Statement of the Case .............................................................................................2

    Course of Proceedings and Disposition Below ....................................................2

        Initial Pleadings …………………………………………………………..2

        Summary Judgment Proceedings …………………………………………...2

            i.     First Motion to Reconsider…………………………………….3

            ii.    Second Motion to Reconsider…………………………………4

        Motions in Limine ………………………………………………………..5

        Jury Trial…………………………………………………………………7

        Statement of Facts ………………………………………………………..9

            Background ………………………………………………………..9

                i. Complaints about Hall Shortly After Dr. Boyd Becomes President……………………………………………………………9

ii. Hall's Paid Administrative Leave …………………………13

iii. Complaint …………………………………………………...13

Statement of the Standards of Review ...................................................13

Summary of the Argument.......................................................................17

Argument..................................................................................................18

I.  The District Court should have granted ASU summary judgment on Hall's gender discrimination claim regarding her paid suspension because Hall did not establish a *prima facie* case. …………………21

A.  Hall's paid administrative leave was not an adverse employment action……………………………………………………………23

B.  Hall did not establish disparate treatment based on Melendez as a comparator. ……………………………………………………...31

i.  Even if Melendez is a proper comparator, ASU proved legitimate non-discriminatory reasons for placing Hall on paid leave that do not amount to pretext. …………….33

ii.  The same decisionmaker did not supervise Hall and Melendez at the time of the respective complaints against them. …………………………………………………….34

iii.  President Boyd did not have actual knowledge of Melendez's alleged offenses when she placed Hall on paid suspension. …………………………………….. 37

II.  The District Court abused its discretion by denying reconsideration of the 2019 Opinion and Order on ASU's Motion for Summary Judgment because ASU was  entitled to judgment as a matter of law on Hall's gender discrimination claim concerning her paid suspension. …….41

A.    Hall's disparate treatment claim fails under this Court's decisions in *Lewis* and *Hester* addressing evaluation of decisionmakers in disparate disciplinary treatment claims. .. 41

B.    Hall's claim further fails under application of the District Court's decision in *Rousseau.* ………43

C.    Hall's claim additionally fails because she did not suffer an adverse employment action under this Court's *Davis* decision……………………………………………………..45

III.    The District Court should have granted ASU judgment as a matter of law at the trial on Hall's gender discrimination claim regarding her paid suspension. …………………………………………………48

IV.    The District Court should have granted ASU judgment notwithstanding the verdict following the trial on Hall's gender discrimination claim regarding her paid suspension. ……………..51

A.    Hall did not present any evidence of intentional discrimination at trial. …………………………………………………53

B.    Hall did not establish a *prima facie* case at trial. …………..54

i.     Hall did not suffer an adverse employment action. …54
ii.    The same decisionmaker did not make disciplinary decisions for Hall and Melendez. …………………………55

iii.   Boyd did not have actual knowledge of Melendez's offenses when she suspended Hall. ……………….. 55

C.    The District Court erroneously included a cat's paw instruction to the jury. …………………………………………………56

Conclusion...........................................................................................51

Certificate of Compliance .......................................................................53

Certificate of Service...............................................................................54

iv

# TABLE OF CITATIONS

<u>Cases</u>

2005 U.S. Dist. LEXIS 57828 (N.D. Ga. Sept. 22, 2005);......................................22

28 U.S.C. §§ 1331 and 1343 ......................................................................................x

*AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1366 (11th Cir. 2021) ......15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.
    Ed. 2d 202 (1986).............................................................................................14

*Anderson v. WBMG-42*, 253 F.3d 561, 566 (11th Cir. 2001) .................................30

*Arthur Rousseau v. Alabama Community College System*, 2021 U.S. Dist. LEXIS
    147775 (M.D. Ala. Aug. 6, 2021) ...............................................................passim

*Banta Props. V. Arch Specialty Ins. Co.*, 553 Fed. Appx. 908, 910 (11th Cir. 2021)
    .......................................................................................................................15

*Banta Props.*, 553 Fed. Appx. at 910 ......................................................................15

*Bellows v. Huntsville Hosp.*, 2018 U.S. Dist. LEXIS 113074, at *11 n.4 (N.D. Ala.
    July 9, 2018).....................................................................................................20

*Bennett v. Chatham County Sheriff Dep't,* 315 Fed. Appx. 152, 159 (11th Cir.
    2008)..................................................................................................................18

*Bennett*, 315 Fed. Appx. at 159.................................................................20, 26, 47

*Brown v. Bd. of Regents of the Univ. Sys. Of Ga.*, 2016 U.S. Dist. LEXIS 183830,
    at *29 (N.D. Ga. Feb. 12, 2016) ......................................................................22

*Brown v. Sybase, Inc.*, 287 F. Supp. 2d 1330, 1343 (S.D. Fla. 2003) ....................22

*Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) ....................14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) .............................................................................46

*Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) .........................15

*Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192-93 (11th Cir. 2004) ..................................................................................15

*Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1271 (6th Cir. 1986) .....................30

*Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1175 (11th Cir. 2005) .........................34

*Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) ......................................19

*Davis v. Daniels*, 655 Fed. Appx. 755, 757 (11th Cir. 2016) .................................14

*Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261 (11th Cir. 2021) ............5, 40, 41, 47

*Davis v. Legal Svcs. Ala., Inc.*, 19 F.4th 1261 (11th Cir. 2021) .............................39

*Davis v. Locke*, 936 F.2d 1208, 1212 (11th Cir. 1991) ..........................................16

*Dendinger v. Ohio*, 207 F. App'x 521, 527 (6th Cir. 2006) ...................................21

*Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006) .........................................13

*Finch v. City of Vernon*, 877 F.2d 1497, 1502 (11th Cir. 1989) ............................16

*Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) ..............14

*Glass v. Seaboard Coast Line R.R. Co.*, 714 F.2d 1107, 1109 (11th Cir. 1983) .....15

*Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) ..........................15

*Grimes v. Rott*, 2021 U.S. App. LEXIS 29113, at *4 (11th Cir. Sep. 27, 2021)45

*Hester v. Univ. of Ala. Birmingham Hosp.*, 798 F. Appx. 453, 457 (11th Cir. 2020) ....................................................................................................31, 36, 47

*Hinton v. Ala. State Univ.*, No. 2:18-CV-00994-RAH, 2020 U.S. Dist. LEXIS 220907, at *19-20 (M.D. Ala. Nov. 25, 2020). ....................................................50

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).........................................19

*Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994) ......................................28

*Instant One Media, Inc. v. Ezfauxdecor, LLC*, 2023 U.S. App. LEXIS 5650, *3 (11th Cir. 2023) .......................................................................................................15

*Jones v. Bessemer*, 137 F.3d 1306, 1212, n.7 (11th Cir. 1998)...............................30

*Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) ..........................20

*Joseph v. Leavitt*, 465 F.3d 87, 90-91 (2d Cir. 2006)...............................................21

*Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ...................................................20

*Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317 n.5 (11th Cir. 2003)38

*Lathem [v. Dep't of Children & Youth Servs.,* 172 F.3d 786,793 (11th Cir. 1999)] ....................................................................................................................................36

*Lentz v. City of Cleveland*, 333 F. Appx. 42, 57 (6th Cir. 2009)..............................20

*Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) ..........................passim

viii

*McCollough v. Buffalo Elec. Co. of Ala.*, 2017 U.S. Dist. LEXIS 154767, at \*7 & n.5 (N.D. Ala. Sept. 22, 2017) ................................................................22

*McCone v. Pitney Bowes, Inc.*, 582 F. Appx. 798, 800 (11th Cir. 2014) ...............20

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ....................................18

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992) ........................36

*Ortega v. Schramm*, 922 F.2d 684, 694-95 (11th Cir. 1991) ...............................45

*Palmer v. Potter*, 2010 U.S. Dist. LEXIS 149100, at \*107-08 (N.D. Ga. Jan. 12, 2010) .........................................................................................................21

*Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) ..................................21

*Pinnacle Port Community Ass'n v. Orenstein*, 952 F.2d 375, 378 (11th Cir. 1992) .............................................................................................................16

*Reynolds v. Ocean Bio Chem/Kinpak, Inc.*, 2014 U.S. Dist. LEXIS 14927, \*12 (M.D. Ala. Jan. 9, 2014) .................................................................................46

*Rousseau v. Ala. Cmty. Coll. Sys.*, 2021 U.S. Dist. LEXIS 147775 (M.D. Ala. 2021) ............................................................................................................4

*S.O. Beach Corp. v. Great Am. Ins. Co.*, 791 Fed. Appx. 106, 109 (11th Cir. 2019). .............................................................................................................14

*See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) ........................passim

*Shockley v. HealthSouth Cent. Georgia Rehab. Hosp.*, 293 Fed. Appx. 742, 745 (11th Cir. 2008) ..............................................................................................38

*Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261, 2001 U.S. App. LECIS 4123, *80, Fair Empl. Prac. Cas. (BNA) 1001, 80 Empl. Prac. Dec. (CCH) P40, 494, 14 Fla. L. Weekly Fed. C 499 .......................................................30

*Smith v. United States*, 894 F.2d 1549, 1552 (11th Cir. 1990...........................45

*Solaroll Shade and Shutter Corp. v. Bio-Energy Sys., Inc*, 803 F.2d 1130, 1132 (11th Cir. 1986) ................................................................................15

*Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999).............20, 47

*Strickland v. Water Works and Sewer Bd. Of the City of Birmingham*, 239 F.3d 1199, 1203 (11th Cir. 2001) ................................................................13

*Summers v. City of Dothan*, 757 F. Supp. 2d 1184, 1204 (M.D. Ala. 2010) ....32, 33

*Tate v. Weyerhaueser Co.*, 723 F.2d 598, 605-06 (8th Cir. 1983) .........................30

*Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) ...............36

*Walker v. Georgia*, 2005 U.S. Dist. LEXIS 57832, at *56 (N.D. Ga. Aug. 8, 2005) ................................................................................................................22

*Walker v. NationsBank of Florida*, 53 F.3d 1548, 1564 (11th Cir. 1995)..............28

*Walton v. Neptune Tech. Group, Inc.*, 2009 U.S. Dist. LEXIS 97213, at *37 (M.D. Ala. Oct. 20, 2009) ................................................................................33

*Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) .......................................21

<u>Statutes</u>

28 U.S.C. §1291 .....................................................................................................x

42 U.S.C. § 200e, *et seq* ................................................................................x

Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of

    1991 ..............................................................................................................x

Rules

Fed. R. Civ. P. 50. ...........................................................................16, 42, 45

Fed. R. Civ. P. 59. ......................................................................................46

Fed. R. Civ. P. 60(b)..................................................................................15

# JURISDICTIONAL STATEMENT

The United States District Court for the Middle District of Alabama ("District Court") had subject matter jurisdiction based upon 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 200e, *et seq*. The claims underlying this appeal arose from Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. The Court has jurisdiction of this appeal pursuant to 28 U.S.C. §1291.

ASU moved for summary judgment on October 23, 2017, which was granted in part and denied in part. ASU twice sought reconsideration of the District Court's denial to no avail, and the remaining claim proceeded to trial.

The trial of this matter in the District Court concluded on December 14, 2022. The jury rendered a verdict in favor of Appellee/Cross-Appellant Telma Hall ("Hall") (together with ASU, the "Parties").  The District Court entered an Amended Final Judgment on September 26, 2023. On October 26, 2023, within 30 days of entry of the District Court's Amended Final Judgment, ASU timely filed its Notice of Appeal.

# STATEMENT OF THE ISSUES

I.    Whether the District Court erred in partially denying ASU's Motion for Summary Judgment?

II.    Whether the District Court abused its discretion in denying ASU's Motion to Reconsider the January 8, 2019 Opinion and Order?

III.    Whether the District Court erred in denying ASU's Motion for Judgment as a matter of law at trial and subsequent renewal?

IV.    Whether the District Court erred in denying ASU's Motion for Judgment Notwithstanding the Verdict following trial and subsequent renewal?

# STATEMENT OF THE CASE

## COURSE OF PROCEEDINGS AND DISPOSITION BELOW

### *Initial Pleadings*

Hall filed her Complaint against ASU in the United States District Court for the Middle District of Alabama ("District Court") on July 19, 2016, alleging violation of Title VII of the Civil Rights Act (as amended) on the bases of gender discrimination and retaliation. (Doc. 1).[1] ASU filed its Answer and Affirmative Defenses on September 6, 2016. (Doc. 6).

### *Summary Judgment Proceedings*

ASU filed its Motion for Summary Judgment on October 23, 2017. (Doc. 20). Hall opposed the motion. (Docs. 26, 27, 35).[2] On August 27, 2018, United States Magistrate Judge Gray M. Borden entered his Memorandum Opinion and Order granting in part and denying in part Alabama State University's Motion for Summary Judgment. (Doc. 50 ("2018 Opinion and Order")). Magistrate Judge Borden denied summary judgment as to Hall's claims for gender discrimination

---

[1] Citations to the record include the District Court document number and page in the District Court docket.

[2] Notably, Hall still filed an untimely response to ASU's Motion for Summary Judgment after previously obtaining additional time. (Docs. 23, 24, 27). Hall asserted that her untimely response was due to technical difficulties with the District Court's electronic filing system. (Doc. 29). The District Court denied ASU's Motion to Strike Hall's Response and denied reconsideration of its Order. (Docs. 28 – 33).

based on her suspension from coaching. (*Id*. at 27). He also denied summary judgment as to Hall's gender discrimination and retaliation claims based on denial of performance-based bonuses. (*Id*.). Magistrate Judge Borden granted summary judgment as to the remaining bases for Hall's gender discrimination and retaliation claims. (*Id*.).

### i.    *First Motion to Reconsider*

On September 6, 2018, ASU filed its Motion to Reconsider the partial denial of its Motion for Summary Judgment on grounds that the District Court erred by 1) treating a paid administrative leave as an adverse employment action; 2) failing to acknowledge ASU's legitimate non-discriminatory reasons for not providing Hall performance-based incentives; and 3) allowing Hall to proceed with a  retaliation claim that she never alleged. (Doc. 52). Hall opposed reconsideration and filed her own Motion to Alter or Amend the 2018 Opinion and Order, asserting that the District Court erred in its partial dismissal of her gender discrimination and retaliation claims. (Docs. 54, 55). Magistrate Judge Borden granted ASU's Motion to Reconsider and Plaintiff's Motion to Alter or Amend for purposes of vacating and setting aside the 2018 Opinion and Order to enter a new Memorandum Opinion and Order, which he issued on January 8, 2019. (Docs. 58, 59 ("2019 Opinion and Order")). In his 2019 Opinion and Order, Magistrate Borden granted summary judgment on all of Hall's gender discrimination and retaliation claims except her

3

claim for gender discrimination in her suspension from employment. (Doc. 59 at 32).

Hall's case was subsequently reassigned to Magistrate Judge Stephen Michael Doyle

on June 26, 2019, and ultimately to Magistrate Judge Jerusha T. Adams on

November 15, 2019. (Docs. 65, 70).

### ii.     Second Motion to Reconsider & Notices of New Case Law

ASU sought leave to file a Motion to Reconsider Magistrate Judge Borden's

2019 Opinion and Order on July 6, 2020, on the basis that Hall had not established

a *prima facie* case of discrimination as to her surviving gender discrimination claim,

which Hall opposed. (Docs. 114, 118). On August 20, 2021, ASU moved for leave

to file a notice of new case law from the Middle District of Alabama decided after

ASU requested leave to seek reconsideration of Magistrate Judge Borden's 2019

Opinion and Order. (Doc. 123). Specifically, ASU wanted the District Court to

consider in Hall's case its August 6, 2021, decision in *Rousseau v. Ala. Cmty. Coll.

Sys.*, 2021 U.S. Dist. LEXIS 147775 (M.D. Ala. 2021), which further interpreted the

knowledge required by a decisionmaker to establish a similarly situated comparator

in a discrimination case. (*Id*.). The District Court granted ASU leave to notice the

new case law, which ASU promptly filed. (Docs. 124, 125). The District Court

thereafter granted ASU leave to move for reconsideration of Magistrate Judge

Borden's 2019 Opinion and Order on September 23, 2021. (Doc. 127).

ASU filed its Motion to Reconsider the 2019 Opinion and Order on October 14, 2021, which Hall again opposed. (Docs. 128, 129). After filing its reply in support of reconsideration, ASU sought leave to notice new Eleventh Circuit Case law on the basis that this Court held in its December 2, 2021, decision in *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261 (11th Cir. 2021), that a suspension with pay does not amount to an adverse employment action for purposes of Title VII liability. (Docs. 130, 134). The District Court allowed ASU to notice the new *Davis* case. (Doc. 135, 136). Nevertheless, despite ASU's arguments and new case law concerning comparators and adverse employment actions, Magistrate Judge Adams denied reconsideration of Magistrate Judge Borden's 2019 Opinion and Order. (Doc. 138).

### *Motions in Limine*

Following denial of ASU's Motion to Reconsider the 2019 Opinion and Order, ASU and Hall filed several Motions in Limine ("MIL") in advance of trial. (Docs. 159 – 161, 166 – 167). The District Court denied ASU's MILs to exclude:

- The alleged prior misconduct of former ASU head baseball coach, Mervyl Melendez, based on irrelevance pursuant to *Federal Rule of Evidence* ("FRE") 401 (Doc. 166 at 1 – 3);

- Testimony from former ASU president, Dr. Gwendolyn Boyd, concerning hypothetical and speculative scenarios unsupported by personal knowledge pursuant to *FRE* 602 (*Id.* at 3 – 4); and

- Testimony, evidence and arguments related to Hall's claims dismissed on summary judgment on grounds of inadmissibility, irrelevance, and unfair prejudice pursuant to *FRE* 401, 402, and 403 (Doc. 167). Hall's dismissed claims included all bases for her Title VII retaliation claim and her gender discrimination claims based on ASU allegedly: paying Hall less than similarly situated male employees; denying her contracts with the same terms and benefits; providing her sport with less financial support; terminating her; failing to follow university policies; and subjecting her to stricter scrutiny. (*Id.* at 1, Doc. 59). Only Hall's claim for gender discrimination in her paid suspension survived summary judgment. (*Id.*).

(Doc. 206, pp. 33: 9 – 25, 34: 1 – 2, 36: 2 – 3, 41: 16 – 19).

As to Hall's MILs, the District Court also denied her motion to exclude evidence concerning her termination and her conduct after her suspension pursuant to *FRE* 401, 402, and 403 (Docs. 159, 206, pp. 18: 13 – 25, 19: 1 – 4). The District Court conditionally granted Hall's MIL to exclude any evidence regarding any NCAA misconduct, investigations, and/or findings which occurred after Hall's suspension. (Docs. 160, 206, pp. 24: 23 – 25, 25: 1 – 2). The District Court also

granted Hall's MILs to exclude any evidence, testimony, argument, or mention of the District Court's rulings themselves on ASU's Motions for Summary Judgment or to Reconsider Summary Judgment (Docs. 161, 206, pp. 31: 19 – 25, 32: 1 – 2).

### *Jury Trial*

Hall's case proceeded to jury trial in the District Court before Magistrate Judge Adams from December 12 - 14, 2022, on Hall's sole surviving claim for gender discrimination claim on the basis of her paid suspension. (Docs. 207 – 209). On December 13, 2022, ASU timely moved for Judgment as a Matter of Law ("JMOL") when Hall rested her case, which the District Court denied. (Doc. 208, pp. 189-94). The District Court again denied ASU when it renewed its JMOL motion. (Doc. 208, pp. 215: 11 – 25, - 216: 1 – 7). A jury verdict was entered in Plaintiff's favor December 14, 2022. (Doc. 188). ASU timely moved for Judgment Notwithstanding the Verdict ("JNOV") on December 15, 2022. (Doc. 189). The District Court denied Alabama State University's Motion for JNOV, without prejudice to refile the motion after entry of judgment. (Doc. 193). On December 19, 2022, the District Court entered final judgment awarding Plaintiff $800,000, plus post-judgment interest at the rate prescribed by 28 U.S.C. § 1961 and taxing costs against ASU. (Doc. 194).

On January 13, 2023, Hall moved to amend the final judgment to encompass the entirety of the relief she requested in her Complaint. (Doc. 198). The same day,

ASU also timely renewed its Motion for JNOV and alternatively requested a new trial. (Doc. 199). ASU based its renewed Motion for JNOV on Plaintiff's failure to present evidence of intentional discrimination and establish a *prima facie* case of discrimination or that, alternatively, ASU had legitimate non-discriminatory reasons for Hall's suspension. (*Id.*). ASU also argued that Plaintiff's compensatory damages award of $800,000 was impermissible as Title VII caps compensatory damages at $300,000 pursuant to 42 U.S.C. § 1981a. (*Id.*).

Magistrate Judge Adams entered her Memorandum Opinion and Order denying ASU's renewed Motion for JNOV and denying Plaintiff's Motion to Amend Final Judgment on September 26, 2023. (Doc. 210). She also construed ASU's renewed Motion for JNOV as containing a Motion to Alter or Amend the Judgment to reduce Plaintiff's compensatory damages in accordance with 42 U.S.C. 1981(a)(3). (*Id.*). To that extent, Magistrate Judge Adams granted ASU's Motion to Alter or Amend the Judgment and reduce Plaintiff's compensatory damages to $300,000. (*Id.*).

On September 26, 2023, the District Court entered an Amended Final Judgment in Plaintiff's favor. (Doc. 211). Hall subsequently moved for attorney fees and expenses, which ASU opposed. (Docs. 214, 216, 224).

ASU timely appealed to this Court on October 26, 2023. (Doc. 218).

**STATEMENT OF FACTS**

### _Background_

Hall is ASU's former Head Women's Softball Coach. (Doc. 20-2, Deposition of Telma Hall ("Hall Depo"), 70: 11 – 19, 71: 16 – 22; Doc. 20-3 at 10, "Hall's ASU Notice of Employment").[3]  Hall assumed her head coach position with ASU in October 2005 after interview with ASU's then-Athletic Director, Patrick Carter, a male. (Doc. 20-2, Hall Dep. at 66: 10 – 23, 67: 1 – 18, 70: 11 – 19, 71: 16 – 22). ASU hired Mervyl Melendez ("Melendez") as its Head Baseball Coach in 2011. (Doc. 20-1).

### i.    _Complaints About Hall Shortly After Dr. Boyd Becomes President_

Dr. Gwendolyn E. Boyd became ASU's president in February 2014. (Doc. 20-8, Deposition of Dr. Boyd ("Boyd Depo") at 106: 10 – 13). Shortly after President Boyd began her tenure, ASU received written complaints from both softball student-athletes and their parents alike, asserting allegations concerning the student-athletes' welfare and potential NCAA violations. (Doc. 20-7 at 55 – 56, March 2, 2014, Core Email; _Id_. at 60 – 64, March 3, 2014 Unsigned Parent Letter; _Id_. at 66 – 71, Compilation of ASU Softball Student-Athlete Letters).  ASU received a March 2, 2014, email from Corrie Core ("Core"), a parent of an ASU softball student-athlete, raising alarming concerns about the girls' softball program. (Doc. 20-2, Hall Dep. at

---

[3] Citations to depositions refer to the docket of the District Court and the page and line number of the deposition transcript.

126: 18 – 23, 127 – 128: 1 – 10; Doc. 20 – 7 at 55 – 56, March 2, 2014 Core Email).

Core sent the email to Melvin Hines ("Hines"), ASU's then current Athletic

Director, as well as other staff in ASU's athletic department, including Derrick

Magee and Jaunelle White. (*Id*.). Core also copied Dr. Boyd on the email. (*Id*.). Core

indicated that some of the student-athletes did not want to return to ASU or wanted

to quit playing softball altogether because of the conditions Hall had created for the

ASU softball program. (*Id*.). Core also stated that she would hate to have to

commence legal action and requested an email back from the individual who would

be addressing her concerns. (*Id*.). Then-current Athletic Director Melvin Hines

responded to Core on March 3, 2014, thanking her for her email and assuring that

ASU prioritized student-welfare and would investigate her concerns. (Doc. 20-7 at

57, Hines Response to Core). Hines also requested Core tell her daughter to come to

his office to discuss her concerns. (*Id*.).

Following Core's email, a softball parent sent an unsigned letter dated March

3, 2014, to President Boyd, also expressing concerns about incidents that had taken

place with the school's softball student-athletes. (Doc. 20-7 at 60 – 64, March 3,

2014 Unsigned Parent Letter). Former Athletic Director Hines also received written

complaints about the softball program from the student-athletes around the same

time as the unsigned letter to President Boyd. (*Id*. at 66 – 71, Compilation of ASU

Softball Student-Athlete Letters; Doc. 20-6, Deposition of Melvin Hines ("Hines

Dep.") at 229: 2 – 18). Hines met with the students who provided letters. (Doc. 20-6, Hines Dep. at 229: 18 – 23).

Together, Core's March 2014 email, the March 2014 unsigned parent letter, and the written complaints to Hines alleged Hall had subjected ASU softball players to conditions suggesting that student well-fare might be in danger because of degrading and negative treatment by Hall, including allegations of:

- Student-athletes constantly being made to feel unworthy;

- Withholding student-athlete gear (warmup clothes, sweatshirts, shoes) until the season had almost started;

- Withholding student-athlete gear because they "did not deserve it" and taking it away when they did not play well;

- Forcing the student-athletes to wear practice t-shirts with hand drawn numbers on the back for at least one game;

- Depriving student-athletes of quality food while traveling when Hall was upset with them;

- Leaving some students on the bus during warm-ups for no legitimate reason;

- Student-athletes experienced harassment and negativity;

- At least one student-athlete required hospitalization from dehydration after seniors made the student run through the "projects" ("subsidized

11

public housing") at night wearing a hooded sweatshirt and no shoes
with Hall's knowledge of the hazing;

- Practice hours exceeding 16 hours and ending too late for student-
  athletes to get cafeteria meals;

- Student-athletes being subjected to degrading remarks from Hall on a
  daily basis;

- Requiring late night team runs at 8:00 p.m.;

- Calling student-athletes bitches;

- Threatening to remove players from the roster or replace them;

- Taking away batting equipment;

- Providing ill-fitting jerseys; and

- Hall's general attitude and derogatory, emotionally draining behavior
  toward the student-athletes.

(Doc. 20-7 at 55 – 56, March 2, 2014, Core email; *Id*. at 60 – 64, March 3, 2014
unsigned parent letter; *Id*. at 66 – 71, Compilation of ASU Softball Student-Athlete
Letters).

## ii.    *Hall's Paid Administrative Leave*

ASU acted swiftly in response to the egregious parent and student allegations
against Hall. ASU informed Hall of President Boyd's approval of her paid
administrative leave pending the outcome of the investigation into her alleged

12

unsatisfactory conduct regarding student-athlete welfare by letter dated March 4, 2014, from Zillah Fluker, Interim Vice President, ASU's Office of Human Resources. (Doc. 20-7 at 75, March 4, 2014 Suspension Letter).

### _Complaint_

Hall filed her Complaint against ASU on July 19, 2016, alleging one count of gender discrimination and one count of retaliation under Title VII of the Civil Rights Act (as amended). (Doc. 1). Hall alleged numerous employment actions by ASU as being bases for her gender discrimination and retaliation claims. (_Id._). However, only her gender discrimination claim on the basis of a difference of treatment in her suspension survived the summary judgment stage and proceeded to trial. (Docs. 59, 207 – 209).

## STATEMENT OF THE STANDARDS OF REVIEW

This Court reviews the District Court's ruling on summary judgment _de novo_, applying the same legal standards that bound the District Court. "[V]iewing all facts and reasonable inferences in the light most favorable to the nonmoving party," summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment." Fed. R. Civ. P. 56(a); _Drago v. Jenne_, 453 F.3d 1301, 1305 (11th Cir. 2006) (citing _Strickland v. Water Works and Sewer Bd. Of the City of Birmingham_, 239 F.3d 1199, 1203 (11th Cir. 2001). "A 'material' fact is one that 'might affect the outcome of the suit under the governing

law.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The District Court erred in allowing Hall's gender discrimination claim on her paid suspension to proceed to trial because ASU satisfied the well-established summary judgment standard on this claim, just as it did on Hall's other claims.

This Court considers denial of a motion to reconsider for an abuse of discretion.[4] *Davis v. Daniels*, 655 Fed. Appx. 755, 757 (11th Cir. 2016). As to motions to reconsider decisions on summary judgment, specifically, denials are likewise reviewed for abuse of discretion. *S.O. Beach Corp. v. Great Am. Ins. Co.*, 791 Fed. Appx. 106, 109 (11th Cir. 2019). Motions for reconsideration of a final judgment or order are governed by Rule 60(b) of the *Federal Rules of Civil Procedure*, which "should be given a liberal and remedial construction."[5] *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) (quoting *Nisson v. Lundy*,

---

[4] The District Court treated ASU's Motion to Reconsider as a motion to correct an error of law.

[5] Both Rules 59(e) and 60 govern motions for reconsideration. Fed. R. Civ. P. 59 – 60. However, motions filed more than 28 days after the court's judgment, as was the case with ASU's Motion to Reconsider the 2019 Opinion and Order here, are specifically governed by Rule 60(b). Fed. R. Civ. P. 60(b). (Docs. 50, 114, 128).

975 F.2d 802, 807 (11th Cir. 1992)); Fed. R. Civ. P. 60(b). While appeal of an order does not bring the underlying judgment up for review, appellants may demonstrate an abuse of discretion by the district court by proving some justification for the requested relief. *Id*. (quoting *Glass v. Seaboard Coast Line R.R. Co.*, 714 F.2d 1107, 1109 (11th Cir. 1983); *Solaroll Shade and Shutter Corp. v. Bio-Energy Sys., Inc*, 803 F.2d 1130, 1132 (11th Cir. 1986)). That is, an abuse of discretion on a Rule 60(b) motion is proven where an appellant demonstrates "a justification so compelling that the court was required to vacate its order." *Id*. (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) ("[T]he decision to deny the motion [] must have been sufficiently unwarranted as to amount to an abuse of discretion.")).

The Court reviews denial of a motion for judgment as a matter of law *de novo* and applies the same standard as the district court. *Banta Props. V. Arch Specialty Ins. Co.*, 553 Fed. Appx. 908, 910 (11th Cir. 2021) (citing *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). *De novo* review is also applied to denial on the motion's renewal. *Instant One Media, Inc. v. Ezfauxdecor, LLC*, 2023 U.S. App. LEXIS 5650, *3 (11th Cir. 2023) (citing *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1366 (11th Cir. 2021)). The Court reviews the entire record, drawing all reasonable inferences in the non-movant's favor. *Banta Props.*, 553 Fed. Appx. at 910 (quoting *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192-93 (11th Cir. 2004). Pursuant to Rule 50 of the *Federal Rules of Civil Procedure*, such

15

motions can be granted on appeal where "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Id.*; Fed. R. Civ. P. 50. Such is the case here.

Finally, denial of a motion for judgment notwithstanding the verdict and its renewal is also a question of law that this Court reviews *de novo*. *Pinnacle Port Community Ass'n v. Orenstein*, 952 F.2d 375, 378 (11th Cir. 1992) (citing *Finch v. City of Vernon*, 877 F.2d 1497, 1502 (11th Cir. 1989). Considering all evidence and construing it in favor of the non-movant, a motion for judgment notwithstanding the verdict should be granted where the evidence favors the movant "'so strongly and overwhelmingly' that *reasonable* persons could not reach a contrary verdict." *Id.* Likewise, reversal of an order denying judgment notwithstanding the verdict is appropriate where the facts show that *reasonable* jurors could not arrive at a contrary verdict. *Davis v. Locke*, 936 F.2d 1208, 1212 (11th Cir. 1991) (emphasis added).

# SUMMARY OF THE ARGUMENT

The District Court erred in denying ASU's Motion for Summary Judgment on Hall's gender discrimination claim regarding her paid suspension.

The District Court abused its discretion in denying ASU's Motion to Reconsider the 2019 Opinion and Order denying summary judgment on Hall's gender discrimination claim regarding her paid suspension.

The District Court erred in denying ASU's Motion for JMOL and subsequent renewal at the trial on Hall's gender discrimination claim regarding her paid suspension.

The District Court erred in denying ASU's Motion for JNOV and subsequent renewal following the trial on Hall's gender discrimination claim regarding her paid suspension.

# ARGUMENT

I.    **The District Court should have granted ASU summary judgment on Hall's gender discrimination claim regarding her paid suspension because Hall did not establish a *prima facie* case.**

There was no genuine dispute as to any material as Hall's claim for gender discrimination in her paid suspension when the District Court ruled on ASU's Motion for Summary Judgement. ASU therefore should have been granted summary judgment as a matter a matter of law accordingly. The Parties agree that the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which also shaped the District Court's analysis, applied to Hall's gender discrimination claim at the underlying summary judgment stage. (*See* Docs. 20, 35, 50 all relying on *McDonnell*). To defeat summary judgment under *McDonnell*, Hall bore the initial burden of proof to demonstrate a *prima facie* case of employment discrimination. *McDonnell*, 411 U.S. at 792.  The District Court and the Parties align on the necessary elements to prove a *prima facie* case of sex discrimination, which required Hall to demonstrate that "1) she belongs to a protected class; 2) *she was subjected to an adverse employment action*; 3) her employer treated similarly situated employees outside of her classification more favorably; and 4) she was qualified to do the job." *Bennett v. Chatham County Sheriff Dep't,* 315 Fed. Appx. 152, 159 (11th Cir. 2008) (emphasis added); *See Holifield v. Reno*, 115 F.3d 1555,

1562 (11th Cir. 1997) (Title VII); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (§ 1983). (Docs. 20-1 at 38 (ASU's Motion for Summary Judgment setting out *prima facie* gender discrimination elements); 59 at 8 (2019 Opinion and Order setting out same). *See generally* Doc. 35, (Hall's Opposition to Summary Judgment discussing the elements of a *prima facie* gender discrimination claim throughout). The Parties and the District Court diverge on the question of Hall's satisfaction of the third *prima facie* element – whether Hall was subjected to an adverse employment action. Without question, however, the evidence on consideration of ASU's Motion for Summary Judgment failed to demonstrate that ASU subjected Hall to an adverse employment action in light of established case law. Hall's claim for disparate treatment in her paid administrative leave thus should have failed as a matter of law at the summary judgment stage.

### A. Hall's paid administrative leave was not an adverse employment action.

The District Court should not have treated Hall's paid administrative leave as an adverse employment action. Hall broadly bases her claim for disparate treatment in her suspension on theories of stricter scrutiny and alleged violation of university policy. (Docs. 35 at 55 – 58; 59 at 9). As specifically relates to disparate disciplinary treatment, Hall needed to prove that 1) she is a member of a protected class; 2) she was qualified for the position or benefit sought; 3) she was subjected to an adverse

employment action; and 4) she suffered from a differential application of work or disciplinary rules. *Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999); *Bennett*, 315 Fed. Appx. at 159 (a plaintiff must show either that she did not violate the work rule, or that the disciplinary measures enforced against h[er] were more severe than those enforced against the other persons who engaged in similar misconduct). With respect to the third element, this Court defined adverse employment action as "a serious and material change in the terms, conditions, or privileges of employment." *McCone v. Pitney Bowes, Inc.*, 582 F. Appx. 798, 800 (11th Cir. 2014).

At the time of the 2019 Opinion and Order, the District Court reasoned that "[t]here is no *per se* rule in the Eleventh Circuit that suspension with pay cannot be considered an adverse employment action." (Doc. 59 at 11). The District Court seemingly ignored that nearly every court in the federal appellate court system's stance that paid administrative leave, without more, does not constitute an adverse employment action. *Bellows v. Huntsville Hosp.*, 2018 U.S. Dist. LEXIS 113074, at *11 n.4 (N.D. Ala. July 9, 2018)("*See, e.g., Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015)(collecting cases); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006)(explaining that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action"); *See also Lentz v. City of Cleveland*, 333 F. Appx. 42, 57 (6th Cir. 2009)(quoting

*Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (quotations and citation omitted)(wherein the Sixth Circuit states "[w]e have held that a suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action."); *see also Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987)(reassignment or demotion without reduction in salary and benefits is not adverse employment action); *Dendinger v. Ohio*, 207 F. App'x 521, 527 (6th Cir. 2006) ("We have repeatedly held, however, that neither an internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of such an investigation constitutes an adverse employment action.")"; *See also Palmer v. Potter*, 2010 U.S. Dist. LEXIS 149100, at *107-08 (N.D. Ga. Jan. 12, 2010)(quoting *Joseph v. Leavitt*, 465 F.3d 87, 90-91 (2d Cir. 2006) (joining the Fourth, Fifth, Sixth, Eighth Circuits)(wherein the Georgia district court stated that "circuit courts of appeals have concluded that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action" because "the terms and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies in appropriate circumstances.")).

The District Court instead focused on district court decisions within the Eleventh Circuit that either 1) found paid suspensions to be adverse employment actions, or 2) found that paid suspension could only be considered non-adverse if the

suspension was for less than one month. (Doc. 59 at 11) (citing *Brown v. Bd. of Regents of the Univ. Sys. Of Ga.*, 2016 U.S. Dist. LEXIS 183830, at *29 (N.D. Ga. Feb. 12, 2016); *Walker v. Georgia*, 2005 U.S. Dist. LEXIS 57832, at *56 (N.D. Ga. Aug. 8, 2005), *adopted*, 2005 U.S. Dist. LEXIS 57828 (N.D. Ga. Sept. 22, 2005); *McCollough v. Buffalo Elec. Co. of Ala.*, 2017 U.S. Dist. LEXIS 154767, at *7 & n.5 (N.D. Ala. Sept. 22, 2017)). In denying summary judgment, the District Court specifically noted that "this is not a situation in which Hall was restored to her position at the end of the suspension." (Doc. 59 at 12). Yet, the District Court also ultimately concluded that there was no discriminatory animus behind Hall's termination. (*Id*. at 18 – 20). It is paradoxical to conclude on the one hand no gender discrimination violative of Title VII in ASU's termination of Hall, whereby she no longer enjoyed *any* benefit of employment, but to find violative discrimination motivated Hall's, on the other hand, in her paid administrative leave, where she continued to receive the same salary without interruption for the duration of her paid leave. (Doc. 20-2, Hall Dep. 188: 4 – 8).

Even considering the circumstantial evidence collectively and construing it in Hall's favor, Hall's paid administrative leave did not constitute "a serious and material change in the terms, conditions, or privileges of employment" to amount to an adverse employment action. (*Id*. at 10) (citing *Brown v. Sybase, Inc.*, 287 F. Supp. 2d 1330, 1343 (S.D. Fla. 2003) ("[I]ncidents can be considered collectively to

determine whether they constitute prohibited discrimination.")).The District Court should have granted ASU summary judgment because there was no genuine dispute of any material fact concerning Hall's paid administrative leave as a non-adverse employment action. There is no dispute that while on leave Hall was always paid and her salary remained the same. (Doc. 20-2, Hall Dep. 188: 4 – 8). Plaintiff did not suffer a loss of benefits and, in turn, did not suffer a "serious and material change in the terms, conditions, or privileges" of her employment. Construing Hall's assertions that she could not attend graduate classes as a student or teach her adjunct classes as paid administrative leave "with more" as amounting to a change in the terms, conditions, and privileges of her employment conflates the nature of both Hall's suspension and employment. (Doc. 35 at 56, 60, 65, 67 – 68 (Hall's Opposition to Summary Judgment arguing that the totality of being unable to attend her graduate classes or continue as an adjunct professor amounted to an adverse employment action)). Hall's suspension pertained to her role as ASU's Head Softball Coach, not her role as an adjunct professor or graduate student. (Doc. 20-7 at 75).

Hall's enrollment as an ASU graduate student did not have any bearing on her position as ASU's Head Softball Coach. The District Court observed that Hall's argument that she was deprived of the benefit of tuition-free classes as a university employee once she was placed on paid administrative leave despite no evidence of record that a) Hall expended any money for tuition that otherwise would have been

23

free, or b) that she made any effort with her professor(s) to make arrangements to complete her class(es) and/or assignments/exams remotely by which she would have been able to complete her class(es) and comply with the suspension directives. (Doc. 59 at 10). Further, there is no evidence of record that supports the notion that Hall's enrollment as a graduate student or attendance of graduate classes was a mandatory term or condition for her Head Softball Coach position.

Hall also argues that her paid suspension was an adverse employment action because, in addition to her role as ASU's Head Softball Coach, she also worked as an adjunct professor for an ASU physical fitness and wellness course during the 2013 – 2014 school year. (Doc. 20-2, Hall Dep. 28: 16 – 23, 29: 1 – 12, 30: 10 – 11). But Hall's position as an adjunct professor did not have any connection to her role as Head Softball Coach either. The terms and conditions of Hall's employment as an adjunct professor were distinct from those for her role as Head Softball Coach. Per Chapter 7 of the ASU Faculty Handbook, adjunct appointments are considered temporary as described in Section 3.2.1 of the Faculty Handbook. (Doc. 20 – 7 at 47 – 50, Faculty Handbook Excerpt). Section 3.2.1 of ASU's Faculty Handbook states that temporary appointments are for a specifically-limited term in a full-time or part-time position in connection with a special program. Temporary appointments, such as Hall's position as an adjunct professor, automatically terminate at the end of the specified period of appointment. (*Id*.). Hall's adjunct professor contract

24

automatically terminated at the end of the Spring 2014 semester, i.e., May 2014, separate from her role and paid administrative leave as ASU's Head Softball coach. (*Id.*; Doc. 20-2, Hall Dep. 30: 10 – 14). Moreover, the March 4, 2014, letter notifying Hall that she was being placed on paid administrative leave plainly addresses her in her capacity as Head Softball Coach only. (Doc. 20-7 at 75). The March 4, 2014, letter also plainly sets out that Hall's paid administrative leave was in connection with investigation of unsatisfactory conduct concerning *student-athlete*, i.e., the players that she coached, welfare. (*Id*). While the letter directed Hall not to have any contact with students during her leave, nothing in the March 4, 2014, notice to Hall indicates that reason behind Hall's paid administrative leave pertained to her role as an adjunct professor in any way. (*Id.*).[6] As such, because Hall continued to be paid for her role as ASU's Head Softball Coach during her administrative leave, there was no serious and material change in the terms, conditions, or privileges" of her employment that would amount to an adverse employment action.

Accordingly, even considering all of the circumstances, did not suffer an adverse employment action, and ASU should have been awarded summary judgment

---

[6] Even assuming, for argument's sake, that Hall's paid leave as Head Softball Coach amounted to a *de facto* termination from her adjunct position (which ASU does not concede), Hall was not entitled to any due process for any such cancellation as Hall's adjunct position was a temporary appointment. (*See* Docs. 20-7 at 47 – 50, 26-7, Deposition of Willie Dixon ("Dixon Depo"), 57:23 – 58: 1 – 14, 173: 4 – 6).

as a matter of law on Hall's gender discrimination claim for her paid administrative leave.

## B. Hall did not establish disparate treatment based on Melendez as a comparator.

The District Court determined that ASU's former Head Baseball Coach Mervyl Melendez was the only sufficient comparator for Hall's disparate treatment claim. (Doc. 59 at 17 – 18). This Court has held that "[t]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers reasonable decisions . . . ." *Bennett*, 315 Fed. Appx. at 159 (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368) (11th Cir. 1999)). Because the evidence of record does not support that Melendez faced allegations of misconduct similar to the allegations against Hall, however, Melendez is not a proper comparator.

Hall's paid suspension arose from a barrage of allegations from both her players and the players' parents alike in March 2014 that suggested player welfare might be in danger because of Hall's alleged negative and degrading treatment. (Doc. 20-7 at 55 – 56, March 2, 2014, Core email; *Id*. at 60 – 64, March 3, 2014 unsigned parent letter; *Id*. at 66 – 71, Compilation of ASU Softball Student-Athlete Letters). The complaints (detailed specifically in the "Statement of Facts"

26

hereinabove) detailed instances of players being subject to harassment, hazing, demoralization, hospitalization, excessive practice hours, food deprivation, among other things, all with Hall's knowledge or directly at her behest. (*Id*.). An issue arose against Melendez in March 2012, a full two years before Hall's suspension, from allegations by parent Gregory Kelly and his son L.K. concerning performance enhancing drug use by Melendez's baseball players and discrimination against non-Hispanic students. (Doc. 20-5, Deposition of Michael Buckner, Esq. ("Buckner Dep."), 42: 12 – 23). Dr. John Knight, the former Executive Vice President at ASU, retained Michael Buckner, Esq. ("Buckner") in or around March 2012 to conduct a comprehensive investigation of Kelly and his son's complaints. (*Id*. at 35: 9 – 19, 40: 16 – 22). Kelly and L.K. declined to be interviewed, so Buckner focused his investigation on a sampling of Caucasian and African-American baseball student-athletes, as well as interviews with coaches, compliance officials and the athletic trainer. (*Id*. at 41: 9 – 23, 42: 1 – 19, 43: 16 – 23, 44: 1 – 22, 194: 10 – 16, 196: 12 – 20). He also reviewed ASU's drug testing information. (*Id*. at 194: 17 – 23). Though a few allegations were substantiated, Buckner ultimately determined that the allegations about student-athlete performance enhancing drug use and discrimination against non-Hispanic players were unsubstantiated. (*Id*. at 43: 1 – 8, 44: 10 – 13).

While the allegations against Melendez potentially involved student welfare, Melendez's issue was distinct because Kelly and his son were the only complainants. Hall however, faced complaints from at least two parents and at least four players. (Doc. 20-7 at 55 – 56, March 2, 2014, Core Email; *Id*. at 60 – 64, March 3, 2014 Unsigned Parent Letter; *Id*. at 66 – 71, Compilation of ASU Softball Student-Athlete Letters). The misconduct allegations against Melendez are further distinguished in that they substantially centered on player conduct rather than conduct by Melendez himself. Thus, Melendez, like the other comparators Hall proffered, is not a proper comparator, and so her claim for disparate treatment in her suspension should have failed.

i.    **Even if Melendez is a proper comparator, ASU proved legitimate non-discriminatory reasons for placing Hall on paid leave that do not amount to pretext.**

Assuming *arguendo* that Melendez is a sufficient comparator (which ASU does not concede), Hall failed to sufficiently demonstrate that ASU's reasons for suspending her were pretextual. *See Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994) (noting evidence of intentional discrimination is required to defeat summary judgment). Specifically, Hall offered no evidence that her paid suspension had no basis in fact; was not actually motivated by the allegations against her; or that the allegations against her insufficient to motivate ASU's decision. *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1564 (11th Cir. 1995) (Johnson, J., specially

concurring) (citations omitted). Both former Athletic Director Hines and former President Boyd received laundry lists of complaints sounding the alarm for student welfare regarding Hall and her softball program. (Doc. 20-7 at 55 – 56, March 2, 2014, Core Email; *Id*. at 60 – 64, March 3, 2014 Unsigned Parent Letter; *Id*. at 66 – 71, Compilation of ASU Softball Student-Athlete Letters) (*See* Statement of Facts, *supra*).  There is no evidence of record demonstrating that ASU's decision to place Hall on paid administrative leave was not sufficiently motivated by the parent and student complaints against her. Indeed, when asked about the appropriate response to Hall's conduct, President Boyd testified that the allegations against Hall concerning her treatment of the students were so egregious that Hall had to be immediately removed from the students so that an investigation and appropriate action could follow. (Doc. 20-8, Boyd Dep. 117: 24 – 25, 118: 1 – 3). President Boyd's decision to suspend Hall with pay was clearly based upon legitimate concern for student welfare and not on any discriminatory motive.

> ii.    **The same decision maker did not supervise Hall and Melendez at the time of the respective complaints against them.**

"[D]iffrences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261, 2001 U.S. App. LECIS 4123, *80, Fair Empl. Prac. Cas. (BNA) 1001, 80 Empl. Prac. Dec. (CCH) P40, 494, 14 Fla. L. Weekly Fed. C

499; *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."); *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1271 (6th Cir. 1986) ("Although a change in managers is not a defense to claims of race or sex discrimination, *it can suggest a basis other than race or sex for the difference in treatment received by two employees*.") (emphasis added); *Jones v. Bessemer*, 137 F.3d 1306, 1212, n.7 (11th Cir. 1998) ("Different supervisors may have different management styles that –while not determinative—could account for the disparate disciplinary treatment that employees experience."); *Tate v. Weyerhaueser Co.*, 723 F.2d 598, 605-06 (8th Cir. 1983) (that one manager may be more lenient than another may explain the different treatment employers receive on a non-discriminatory basis).

William Harris was ASU's Interim President at the time of the 2012 Melendez allegations. (Doc. 20-8, Boyd Dep. 106: 10 – 13). President Boyd did not begin her tenure until February 2014. (*Id.*). The university president, regardless of who holds the office, is the only ASU official with the authority to suspend an employee with pay. (Doc. 26-8 at 98, 6.1.2.(e)). The District Court determined that the presence of two different supervisors is not determinative in evaluating disparate treatment in discipline. (Doc. 59 at 15) (citing *Anderson v. WBMG-42*, 253 F.3d 561, 566 (11th Cir. 2001) (stating that cited authorities do not stand for the proposition that

30

whenever two different supervisors are involved in administering the disciplinary actions the comparators cannot as a matter of law be similarly situated for Title VII purposes)). The District Court failed to consider that while not determinative, the difference in managerial styles and difference in persons holding the same supervisory position could explain a non-discriminatory basis for a difference in treatment between two comparators and thus, failed to consider that impact in evaluating Hall's disparate treatment. (*Id.*). Though the District Court relied on *Anderson* to determine the difference in university presidents was inapposite, the Court in *Anderson* still considered that the plaintiff and comparator there *did not have different supervisors*. *Anderson*, 253 F.3d at 566. The District Court did not address this distinction in its 2019 Opinion and Order. Nevertheless, as discussed *infra*, the District Court's failure to consider the different supervisors is inconsistent with this Court's later decisions in *Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc) and *Hester v. Univ. of Ala. Birmingham Hosp.*, 798 F. Appx. 453, 457 (11th Cir. 2020) maintaining consideration of a difference in supervisors.

### iii. President Boyd did not have actual knowledge of Melendez's alleged offenses when she placed Hall on paid suspension.

The District Court concluded Hall established a *prima facie* case on the basis that "Boyd, the President of ASU who approved the suspension of Hall and who became President before the end of the investigation of [Mervyl] Melendez, testified

in her deposition when given a hypothetical question consistent with the evidence concerning a complaint against baseball head coach Melendez that the offender in the hypothetical should have been suspended as hall was." (Doc. 59 at 16). This ignores that Boyd did not have actually knowledge of Melendez's offense in 2012 because she could not have had knowledge of anything pertaining to Melendez or any other university-employee matter before she became ASU's President. This Court, however, has observed the significance of an employer's knowledge. *Jones*, 874 F.2d 1534. In *Jones*, this Court evaluated disparate treatment where Jones's former supervisor had previously permitted employees to use government vehicles for personal matters and his new supervisor elected to do things "by the book." *Jones*, 874 F.2d at 1536. Jones's new supervisor saw him using the police vehicle when he was off duty and recommended him for suspension. *Id*. Jones received a one-day suspension without pay following a disciplinary hearing. Jones then filed suit alleging disparate disciplinary treatment. *Id*. This Court observed that a *prima facie* case of discriminatory motive required showing that the new supervisor or the higher-up supervisor who actually placed Jones on unpaid suspension was aware of prior personal uses of government vehicles by persons outside the protected class and that those violations "were consciously overlooked." *Id*. at 1542; *see Summers v. City of Dothan*, 757 F. Supp. 2d 1184, 1204 (M.D. Ala. 2010) (quoting *Walton v. Neptune Tech. Group, Inc.*, 2009 U.S. Dist. LEXIS 97213, at *37 (M.D. Ala. Oct.

20, 2009) (citing *Jones*, 874 F.2d at 1542) (wherein the District Court stated "actions of the employer toward the proffered comparators are only relevant if the decisionmaker knew of the prior rule violations by the comparators and took no action against them."). Because Jones did not provide any evidence that either his immediate or higher-up supervisor had any knowledge of impermissible government vehicle usage, this Court concluded that Jones failed to establish a *prima facie* case of disparate treatment. *Id*.

This Court's decision in *Jones* is squarely applicable to the facts at hand. Though there was a report made submitted by ASU's external NCAA consultant in September 2013 on the Melendez allegations, and an additional report made in February 2015 (Doc. 26-24), there is no evidence of record that President Boyd knew about the report *or* the Melendez allegations *at the she placed Hall on paid administrative leave on March 4, 2014*. (Doc. 20-5 at 75, March 2014 Suspension Letter). The evidence is undisputed that President Boyd, the sole decisionmaker for suspensions with pay, had absolutely no knowledge of the 2012 allegations against Melendez at the time of Hall's suspension. When asked if she knew about the Melendez allegations, she testified that a complaint was never made to her. (Doc. 20-8, Boyd Dep. 121: 1 – 3); See *Summers*, 444 F. Appx. at 348 (11th Cir. 2011) (quoting *Silvera*, 244 F.3d at 1262) (wherein the Eleventh Circuit stated that "[k]nowledge of a prior act cannot be imputed on a decision maker, because

"[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.");[7] *See also Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1175 (11th Cir. 2005) (stating "discrimination cannot be based on the constructive knowledge of the decision maker, or what the decisionmaker should have known.")). President Boyd testified no this dispositive fact,

| 18 |   | Hypothetically, if a baseball player's |
| 19 |   | father complained that the coaches were asking the |
| 20 |   | students to take performance-enhancing drugs, or |
| 21 |   | steroids, or anything such as that, would that be |
| 22 |   | immediately (sic) enough to suspend the coaches |
| 23 |   | pending an investigation |
| 24 | A | Pending an investigation, absolutely |
| 25 |   | because that's an NCAA violation |

| 1 | Q | And do you know whether any such complaint |
| 2 |   | like that was received by ASU against - - |
| 3 | A | **Not to me.** |

(Doc. 20-8, Boyd Dep. at 120:18-25, 121: 1 – 3). President Body's lack of actual or constructive knowledge of the 2012 Melendez allegations should have disposed of Hall's claim for disparate disciplinary treatment.

Also, as discussed later, the District Court's failure to acknowledge President Boyd's lack of actual knowledge is inconsistent with a later decision it issued in *Arthur Rousseau v. Alabama Community College System*, 2021 U.S. Dist. LEXIS

---

[7] Of note, the District Court improperly relied on President Boyd's response to a "hypothetical situation" to conclude that the "same ASU policy applied to, and was violated by Melendez and Harris." (Doc. 20-8, Boyd Dep. 120: 18 – 25, 121: 1 – 3; 59 at 14).

147775 (M.D. Ala. Aug. 6, 2021) maintaining allegations of disparate treatment are inapposite absent actual employer knowledge of the offenses. ASU, accordingly, was due summary judgment.

> **II.** **The District Court abused its discretion by denying reconsideration of the 2019 Opinion and Order on ASU's Motion for Summary Judgment because ASU was entitled to judgment as a matter of law on Hall's gender discrimination claim concerning her paid suspension.**

Notwithstanding Hall's failure to make a *prima facie* case for failure to demonstrate an adverse employment action and disparate treatment in her paid suspension, the District Court should have reconsidered the 2019 Opinion and Order because subsequent case law by the District Court and Eleventh Circuit rendered the 2019 Opinion and Order inconsistent with new case law and entitled ASU to judgment as a matter of law.

> **A. Hall's disparate treatment claim fails under this Court's decisions in *Lewis* and *Hester* addressing evaluation of decisionmakers in disparate disciplinary treatment claims.**

Following the District Court's 2019 Opinion and Order, this Court issued new case law addressing the establishment of disparate treatment for a *prima facie* disparate disciplinary treatment claim that more specifically interpreted demonstration of a similarly situated comparator. In *Lewis*, this Court expressly set forth that similarly situated comparators:

- will have engaged in the same basic conduct (or misconduct) as the plaintiff, see, e.g., *Mitchell v. Toledo Hosp*., 964 F.2d 577, 580, 583 (6th Cir. 1992) (holding that a plaintiff terminated for "misuse of [an employer's] property" could not rely on comparators allegedly guilty of "absenteeism" and "insubordination");

- will have been subject to the same employment policy, guideline, or rule as the plaintiff, see, e.g., *Lathem [v. Dep't of Children & Youth Servs.,* 172 F.3d 786,793 (11th Cir. 1999)] (holding that a plaintiff's proffered comparators were valid where all were subject to the same "workplace rules or policies");

- will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff, *see, e.g., Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) (observing that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis"); and

- will share the plaintiff's employment or disciplinary history, see, e.g., *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) (explaining that "[d]ifferences in experience and disciplinary history" can disqualify a plaintiff's proffered comparators)."

*Lewis*, 918 F.3d at 1227-28. *Hester*, thereafter, followed *Lewis*, stating ""[p]ursuant to *Lewis* a comparator should, generally, have (1) "engaged in the same basic conduct (or misconduct);" (2) "been subject to the same employment policy, guideline, or rule;" (3) ***"been under the jurisdiction of the same supervisor;"*** and (4) shared a similar "employment or disciplinary history" to the plaintiff.

*Hester*, 798 F. Appx. at 457 (quoting *Lewis*, 918 F.3d at 1227-28) (emphasis added).

As discussed, *supra*, Melendez and Hall were ***not*** under the jurisdiction of the same university presidents at the time of the respective 2012 and 2014 allegations against them. The District Court made the same fatal mistake in disregarding *Lewis* and *Hester*'s application as previously made in 2019 Opinion and Order – failing to consider the impact of the different supervisors on Hall's alleged disparate treatment. (Doc. 138 at 6 – 7). *Lewis* and *Hester* clearly renewed this Court's position that the impact of different supervisors is a necessary consideration in the evaluation of disparate disciplinary treatment. Reconsideration was due, as summary judgment in ASU's favor would have been consistent with *Lewis* and *Hester*.

### B. Hall's claim further fails under application of the District Court's decision in *Rousseau*.

Evaluating the propriety of reconsideration based on President Boyd's knowledge of the Melendez allegations, the District Court likewise disregarded its own decision in *Rousseau*. (Doc. 138 at 8 – 9). The District Court stated in *Rousseau* that ***"'[e]ven if another employee violated the same work rule as the plaintiff and was not punished for it, for the other employee to be deemed similarly situated to the plaintiff <u>requires a showing that the employer was aware of the other employee's misconduct.</u>'"***. *Rousseau*, 2021 U.S. DIST LECIS 147775, *13 – 14 (emphasis added) quoting *Prior v. Norfolk S. Corp.*, 2019 WL 3429386, at *6 (N.D. Ala. July 30, 2019) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313,

1317 n.5 (11th Cir. 2003)); *Jones*, 874 F.2d at 1541 (plaintiff's allegation that other comparators violated same work rule was "inapposite," absent any evidence that the employer "knew of such transgressions."); *Shockley v. HealthSouth Cent. Georgia Rehab. Hosp.*, 293 Fed. Appx. 742, 745 (11th Cir. 2008) ("Evidence that other employees were guilty of similar misconduct but were not disciplined does not establish that an individual is similarly situated when the party taking the adverse action was unaware of the employees' misconduct."). The District Court in *Rousseau* ultimately concluded that there was no *prima facie* case "without evidence that the Chancellor [the decisionmaker] was aware" of the same policy violation by another employee. *Id*. at *14.

Despite its conclusion in *Rousseau*, the District Court found reconsideration was not merited here because the "officials who made the recommendation for the discipline remained the same." (Doc. 138 at 8 – 9) (citing Doc. 26-5, Hines Dep., 65:254, 66:256-57, and 84:331). It is true that Athletic Director Hines recommended Hall's paid suspension to President Boyd through ASU's Executive Vice President/Chief Operating Officer. (Doc. 26-5, Hines Dep., 65:254). But neither Hines nor Knight had the authority to ultimately carryout Hall's suspension. As previously discussed, the District Court again ignored that President Boyd was ASU's sole decisionmaker for suspension with pay at the time of Hall's paid

suspension. (Doc. 26-8 at 98, 6.1.2.(e)). Thus, reconsideration was merited in favor of granting summary judgment on Hall's disparate disciplinary treatment claim.

### C. Hall's claim additionally fails because she did not suffer an adverse employment action under this Court's *Davis* decision.

The District Court determined that the 2019 Order and Opinion did not conflict with this Court's subsequent decision in *Davis v. Legal Svcs. Ala., Inc.*, 19 F.4th 1261 (11th Cir. 2021). Yet the District Court maintained its reasoning that the totality of circumstances surrounding Hall's pushed her paid administrative leave over the threshold for an adverse employment action. As discussed previously, ASU disagrees.

In addition to her arguments that the paid suspension from her position as Head Softball Coach adversely impacted her position as an adjunct professor, Hall also argues the terms, conditions, and privileges of her employment were altered because she was banned from campus, unable to participate in the investigation of the allegations against her, and deprived from accessing files. (Doc. 35). Nevertheless, these additional circumstances do not amount to evidence of additional circumstances that would make Hall's paid suspension an adverse employment action, particularly with respect to her entitlement to participate in investigation of the allegations against her. Hall's status at the time she executed her first ASU Notice of Employment in October 2005 was a Special Athletic Appointee.

(Doc. 20-2, Hall Dep. 70: 11 – 23, 71 – 72: 1 – 6; 20-3 at 10, October 2005 Notice of Employment). Hall's status as a Special Athletic Appointee never changed throughout the duration of her time as Head Softball Coach. (Doc. 20-3 at 10, 22, 24, Notice of Employment for 2005, 2006, 2007 – 08; Doc. 20-7 at 17, Notice of Employment for 2012-13). Special Athletic Appointees, however, are not classified employees and not have the due process rights set out in ASU's Policies and Procedures Manual. (Doc. 26-7, Dixon Dep. 94: 2 – 7, 166: 19 – 23, 167: 1 – 3).

Additionally, Hall's ban from campus and directive not to have any contact with students also fails to raise her paid administrative leave to the threshold for adverse employment actions. In *Davis*, this Court scrutinized property access measures far more harsh than those put in place concerning Hall's access to campus or students. Following paid suspension, Legal Services Alabama ("LSA") posted a security guard in front of its building. *Davis*, 19 F.4th at 1264. The *Davis* Court observed that there was no evidence of record that placing a guard at the building was out of the ordinary for LSA. *Id*. at 1267.

In *Davis*, the use of a security guard for the employer's facility did not convert a simple paid into an adverse employment action. *Id*. The same is true here. Hall argues that the use of escorts and police officers converted her paid administrative leave into something more. (Doc. 35 at 61). However, there is no evidence of record that using an escort or police officer was anything out of the ordinary for procedures

40

following an employee's paid suspension. Key is the Court's observation in *Davis* on the need for paid suspensions as an employment tool:

> We agree with our sister Circuits that a simple paid suspension is not an adverse employment action." A paid suspension can be a useful tool for an employer to hit "pause" and investigate when an employee has been accused of wrongdoing. And that is particularly so in a case like this one—where the employee under investigation is in charge of all the employees who are the witnesses. As a practical matter, employers cannot expect employees to speak freely to investigators when the person under investigation is looking over their shoulders. Employers should be able to utilize the paid- suspension tool in good faith, when necessary, without fear of Title VII liability.

*Davis*, 19 F.4th at 1267. In light of *Davis*,[8] the 2019 Opinion and Order merited reconsideration and the District Court abused its discretion in denying ASU's Motion to Reconsider summary judgment.

---

[8] *Davis* was originally filed here in the United States District Court for the Middle District of Alabama, C.A. No.2:18-cv-26-RAH-JTA, U.S.D.C. (M.D. Ala.). *Davis v. Legal Servs. Ala., Inc.*, 472 F. Supp. 3d 1123 (M.D. Ala. 2020). The District Court stated, "Davis depicts his suspension with pay as an actionable employment action; the Defendants disagree, citing a host of cases that stand for the proposition that a suspension with pay during an investigation does not rise to a sufficient level." 472 F. Supp. 3d at 1130. "Davis describes his suspension with pay as inherently different because he was a high profile, executive level employee of a statewide organization and therefore was saddled with an added stigma not otherwise attached to a suspension leveled against a lesser employee." *Id.* In granting Defendant's Motion for Summary Judgment, the District Court concluded "Davis may have been offended, and he may indeed think that the mere act of being suspended amounted to a grave misdeed, but an employee's subjective view of the significance and adversity of the employer's action does not control." 472 F. Supp. 3d at 1130 (citing *Doe v. DeKalb Cty. Sch. Dist.*, 145 F.3d 1441, 1445 (11th Cir. 1998)). "To rule otherwise is to make every inquiry by any employer as to any conduct by a suspended employee, regardless of the cause or circumstances, into an adverse action sufficient to trigger application of federal antidiscrimination law." 472 F. Supp. 3d at 1130-31(*See, e.g., Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (observing that the "terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from [an employer's] disciplinary procedures"); *cf. Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004) ("[A] tangible employment action is a significant hiring, firing, failing to promote, reassignment with significantly different

### III.  The District Court should have granted ASU judgment as a matter of law at the trial on Hall's gender discrimination claim regarding her paid suspension.[9]

Rule 50(a) of the *Federal Rules of Civil Procedure* provides for judgment as a matter of law where after fully hearing a party on an issue during a jury trial, a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. Fed. R. Civ. P. 50(a).

Hall's case proceeded to jury trial in the District Court before Magistrate Judge Adams from December 12 - 14, 2022, on Hall's sole surviving claim for gender discrimination claim on the basis of her paid suspension. (Docs. 207 – 209). On December 13, 2022, ASU timely moved for Judgment as a Matter of Law ("JMOL") when Hall rested her case, which the District Court denied. (Doc. 208, pp. 189-94). In support of her case in chief, Hall's counsel presented testimony from Hall; ASU's director of HR, Willie Dixon (by deposition); former President Boyd; former Athletic Director Hines; Michael Buckner, the outside counsel who investigated the claims against Hall; and Lloyd Kelly, a 2013 ASU graduate and former baseball player under Melendez who had asserted allegations against Melendez in 2012. (*Id.* at 1 – 189). ASU made its Motion for JMOL, arguing that

---

responsibilities, or a decision causing a significant change in benefits."), *cited in Hyde v. K. B. Home, Inc.*, 355 F. Appx. 266, 271 (11th Cir. 2009)).

[9] ASU fully adopts all of its previous arguments and case law cited herein as if set forth fully here.

the Hall still had not established a *prima facie* case as she did not present evidence that controverted this Court's position that treatment by different decisionmakers is seldom the basis for a viable claim of discrimination. (Doc. 208 at 189: 6 – 12); *See Silvera v. Orange County Sch. Bd.*, 244 F.3d. at 1261. Relying on this *Lewis* and other Eleventh Circuit case law cited in support of its pre-trial summary judgment arguments, as previously discussed herein and fully adopted here, ASU further argued that the evidence had proven that, among other things:

- The same supervisor was not in place when the Melendez and Hall investigations occurred (Doc. 208 at 47: 2 – 5, 189: 7 – 12);

- The Melendez investigation occurred in 2012 under then-President William Harris and then-Athletic Director Stacy Danley (*Id*. at 153: 10 – 16, 189: 7 – 12);

- Boyd was the President at the time Hall was suspended (*Id*. at 153: 17 – 18);

- President Boyd had only been at ASU roughly 30 days when she had to make a decision about Hall (*Id*. at 48: 1 – 2, 189: 13 – 15);

- President Boyd knew nothing about the Melendez allegations and had no actual awareness of them at the time of her decision to suspend Hall because no one had discussed it with her (*Id*. at 73: 14 – 21189:15 – 17);

- President Boyd had no reason to discriminate against Hall because she never met her (*Id*. at 48: 1 – 2);

43

- Hall's recommendation for suspension was not based on her sex (*Id*. at 155: 10 – 25, 156: 1 – 11);

- President Boyd was the sole, ultimate decisionmaker with authority on Hall's suspension (*Id*. at 17: 16 – 21, 19: 10 – 14, 61: 5 – 13, 62: 13 – 17, 72: 24 – 25, 73: 5 – 13);

- President Hall never delegated her authority to suspend employees with pay (*Id*. at 73: 12 – 13);

- At the time of President Boyd's decision to suspend Hall, there was correspondence sent to President Boyd concerning Hall's conduct in her softball program (*Id*. at 154: 10 – 23, 191: 12 – 20);

- Hall was placed on paid leave because of the allegations against Hall and so the university could investigate the allegations against her (*Id*. at 18: 4 – 25; 154: 10 – 23, 155: 1 – 11); 191: 17 – 25, 192: 1 – 2); and

- Hall continued to be paid the same salary during her administrative leave (Doc. 207 at 81 – 86: 1 – 9).

Based on the establishment of these facts, in light of *Lewis, Silvera*, and other Eleventh Circuit case law previously discussed herein, the District Court should have granted ASU judgment as a matter of law, either on its initial motion or on its renewal, pursuant to Rule 50(a).

44

The District Court again denied ASU when it renewed its JMOL motion. (Doc. 208, pp. 215: 11 – 25, - 216: 1 – 7).

### IV.    The District Court should have granted ASU judgment notwithstanding the verdict following the trial on Hall's gender discrimination claim regarding her paid suspension.[10]

Based on the facts and case law supporting ASU's JMOL motions, ASU properly sought judgment notwithstanding the verdict following trial. The facts supporting judgment as a matter of law under Rule 50(a) of the *Federal Rules of Civil Procedure* likewise supported judgment notwithstanding the verdict under Rule 50(b). Fed. R. Civ. P. 50(b). "A motion for judgment notwithstanding the verdict should be granted only if, in viewing all the evidence and construing all inferences in the light most favorable to the nonmoving party, the court finds no reasonable juror could have reached the verdict returned." *Grimes v. Rott*, 2021 U.S. App. LEXIS 29113, at *4 (11th Cir. Sep. 27, 2021)(citing *Ortega v. Schramm*, 922 F.2d 684, 694-95 (11th Cir. 1991) (*per curiam*)). "The moving party is entitled to a directed verdict if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Smith v. United States*, 894 F.2d 1549, 1552 (11th Cir. 1990); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L.

---

[10] ASU adopts all of its previous arguments and case law cited herein as if set forth fully here.

Ed. 2d 265 (1986). While a new trial is alternatively permitted under Rule 59 of the *Federal Rules of Civil Procedure*, the evidence at trial and pertinent case law clearly favored entry of judgment notwithstanding the verdict. Fed. R. Civ. P. 59.

### A.  Hall did not present any evidence of intentional discrimination at trial.

Plaintiffs bear the ultimate burden of proving intentional discrimination in employment discrimination cases. *Reynolds v. Ocean Bio Chem/Kinpak, Inc.*, 2014 U.S. Dist. LEXIS 14927, *12 (M.D. Ala. Jan. 9, 2014) (citations omitted). There gender related evidence presented at trial were stipulations that Hall is female, and Melendez is male. (Doc. 207 at 25:20 – 21, 27: 1 – 3). Both Hines and Boyd testified at trial Hall's suspension was based on the allegations against her and had nothing to do with her sex. (Doc 208. at 18: 4 – 25, 154: 10 – 23, 155: 1 – 25, 156: 1 – 11, 191: 17 – 25, 192: 1 – 2). Hall did not present any evidence as to why Melendez was not suspended with pay following the 2012 allegations or any evidence that the inaction was based on Melendez's sex.

### B. Hall did not establish a *prima facie* case at trial.

As has been amply discussed herein, Hall needed to prove four elements to the jury at trial. Specifically, she needed to establish that 1) she is a member of a protected class; 2) she was qualified for the position or benefit sought; 3) she was

subjected to an adverse employment action; and 4) she suffered from a differential application of work or disciplinary rules. *Spivey.*, 196 F.3d at 1312. And as to the fourth prong, Hall needed to demonstrate either that she did not violate the work rule, or that the disciplinary measures enforced against h[er] were more severe than those enforced against the other persons who engaged in similar misconduct. *Bennett*, 315 Fed. Appx. at 159. For the same reasons ASU asserted at the summary judgment stage, including on reconsideration and as previously discussed, Hall did not establish the third or fourth prong of a *prima facie* case.

### i.    Hall did not suffer an adverse employment action.

Consistent with the standards for evaluating paid administrative leave set out in this Court's *Davis* decision, the evidence at trial showed that Hall's salary remained the same when she was placed on administrative leave. (Doc. 207 at 81 – 86: 1 – 9). Nor did Hall present any evidence that her employment as Head Softball Coach was contingent or related to her employment as an adjunct professor or any evidence that the terms and conditions of her employment required her to attend or complete graduate classes. Accordingly, Hall did not establish a *prima facie* case.

### ii.    The same decisionmaker did not make disciplinary decisions for Hall and Melendez.

Following this Court's decisions in *Jones*, *Lewis,* and *Hester*, judgment notwithstanding the verdict should have been entered because the evidence at trial

47

demonstrated that former President Harris was the decisionmaker in 2012 at the time of the Melendez allegations, and Boyd did not become President until February 2014, roughly 30 days before Hall was suspended. (Doc 208. at 47: 2 – 5, 153: 10 – 18).

### iii.   Boyd did not have actual knowledge of Melendez's offenses when she suspended Hall.

The evidence at trial did not overcome the District Court's standard for employer awareness of prior misconduct in *Rousseau*. Hall did not present any evidence to show that President Boyd had actual knowledge of Melendez's alleged offenses when she suspended Hall. Rather, the testimony at trial was that Boyd knew nothing about the Melendez allegations and had no actual awareness of them at the time of her decision to suspend Hall because no one had discussed it with her (*Id*. at 73: 14 – 21189:15 – 17). Thus, Hall's jury verdict should not have withstood ASU's JNOV motion under rule 50(b).

## C. The District Court erroneously included a cat's paw instruction to the jury.

The District Court correctly called into question the propriety of a cat's paw theory of liability in ruling on the Parties' Motions in Limine. (Doc. 206 at 13 – 19: 1 – 4). Hall's counsel was unable to directly articulate for the District Court where in Hall's Complaint a cat's paw theory of liability was pled. (*Id*.). The District Court observed that the comments to Eleventh Circuit Pattern Jury

Instruction comments 4.5 note that a cat's paw charge is optional and only to be used in cases where the plaintiff claims that 1) the employer's decision was based on the recommendation of plaintiff's supervisor *and*, 2) the plaintiff's protected trait was a motivating factor in the supervisor's recommendation. (*Id*. at 15: 18 – 24). Not only was Hall's counsel unable to clearly articulate any express allegation of ASU's Title VII liability for disparate disciplinary treatment under a cat's paw theory, but testimony at trial established only President Boyd could make the ultimate suspension decision, despite any recommendations one way or the other. (Doc. 208. at 17: 16 – 21, 19: 10 – 14, 61: 5 – 13, 62: 13 – 17, 72: 24 – 25, 73: 5 – 13). The testimony at trial also established that Hall's sex was not the motivating factor behind her recommended suspension with pay. (Id. at 155: 10 – 25, 156: 1 – 11, 159: 1 – 2). Former Athletic Director Hines expressly testified that Hall's sex did not come into play in deciding to recommend Hall's suspension. (*Id*.). Rather, Hines testified that he recommended her suspension based on the correspondence he and President Boyd received because, after talking with Boyd and Dr. Knight, they thought it best to conduct an investigation and put a suspension in place to quell the potential for a hostile work environment. (*Id*.).

> Under a cat's paw theory of liability, 'causation may be established if the plaintiff shows that the decisionmaker followed [a] biased recommendation without independently investigating the complaint against the employee." "In such a case, the recommender is using the

49

> decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus.

*Hinton v. Ala. State Univ.*, No. 2:18-CV-00994-RAH, 2020 U.S. Dist. LEXIS 220907, at \*19-20 (M.D. Ala. Nov. 25, 2020).

Dr. Boyd did not just blindly approve Hines's recommendation. Rather, Dr. Boyd testified that upon receipt and review of the correspondence from parents to her alleging student welfare issued on the softball team, she made the ultimate decision to place Hall on administrative leave with pay. (Doc. 208 at 69 – 73: 1 – 23). Despite its pre-trial concerns, the evidence at trial to the contrary, and despite the fact that it did not deny summary judgment on a cat's paw theory of liability (Docs. 59, 138), the District Court nevertheless allowed the cat's paw theory of liability to proceed to the jury. ASU maintains that the cat's paw theory was not properly before the jury and should not have been included in the jury instructions as it was not justified by the evidence at trial. This considered, the District Court should have granted ASU's Rule 50(b) JNOV motion.

# CONCLUSION

Hall's claim for disparate treatment in her paid suspension should not have survived the summary judgment phase. Nor should Hall's claim have survived ASU's motions for judgment as a matter of law and judgment notwithstanding the verdict during the trial phase. Accordingly, for all of the reasons set forth herein, the judgment of the District Court on ASU's Motion for Summary Judgment on Hall's claim for disparate treatment in her paid suspension should be reversed or, alternatively, reversed on ASU's Motion to Reconsider the 2019 Opinion and Order, Motions for Judgment as a Matter of Law, or Judgment Notwithstanding the Verdict.

/s/ *Shauncey Hunter Ridgeway*
Bill D. Bensinger
Shauncey Hunter Ridgeway
**CHRISTIAN & SMALL LLP**
1800 Financial Center
505 Twentieth Street North
Birmingham, Alabama 35203
Tel: (205) 795-6588
Fax: (205) 328-7234
bdb@csattorneys.com
603 Duling Avenue, Ste. 204
Jackson, MS 39216
Tel: (601) 427-4050
Fax: (601) 707-7913
shr@csattorneys.com

51

Kenneth L. Thomas
Ramadanah S. Jones
Joi C. Scott
**OFFICE of the GENERAL COUNSEL**
**ALABAMA STATE UNIVERSITY**
P.O. Box 271
Montgomery, AL 36101-0271
Telephone: (334) 229-1465
kthomas@alasu.edu
rsjones@alasu.edu
jscott@alasu.edu

*Counsel for Appellant,*
*Alabama State University*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a), counsel for the Appellant, certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 12,014 words, excluding the parts of the brief exempted from the length limitation by Eleventh Circuit Rule 32-4.

Counsel for Appellant further certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2016 in 14-point Times New Roman font, a proportionally spaced typeface.

DATED this the 21st day of February, 2024.


/s/*Shauncey Hunter Ridgeway*
Counsel for Appellant

# CASE NO. 23-13573

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| **TELMA O. HALL,** | |
| **Plaintiff-Appellee/Cross-Appellant,** | **On Appeal from the United States District Court for the Middle District of Alabama, Northern Division Case No. 2-16-cv-00593-JTA** |
| **v.** | |
| **ALABAMA STATE UNIVERSITY,** | |
| **Defendant-Appellant/Cross-Appellee.** | **CROSS APPEAL No. 23-13574** |

# CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing brief upon counsel of record in this appeal by electronic service via the CM/ECF filing system:

Candis A. McGowan
Lacey K. Danley
WIGGINS, CHILD, QUINN &
PANTAZIS, LLC
301 19th Street North
Birmingham, Alabama 35203
CMGowan@wigginschilds.com
LDanley@wigginschilds.com

Sabrina Comer
COMER ELDER LAW, PLLC
325 North Hull Street
Montgomery, Alabama 36104
sabrina@comerelderlaw.com

Shanitra Jackson
Alabama Education Association
422 Dexter Avenue
Montgomery, Alabama 31604

DATED this the 21st day of February, 2024.

/s/ *Shauncey Hunter Ridgeway*
Counsel for Appellant